# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

JERRY T. BURKE,

    Plaintiff,

VS.                                                               No. 05-2028-T/An

STATE OF TENNESSEE, ET AL.,

    Defendants.

---

ORDER TO COMPLY WITH PLRA
ORDER ASSESSING $150 FILING FEE
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Jerry T. Burke, Tennessee Department of Correction ("TDOC") prisoner number 142942, who was, at the time he commenced this action, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in the Western Division of this district on January 11, 2005, along with an *in forma pauperis* affidavit. On April 19, 2005, United States District Judge J. Daniel Breen issued an order transferring the case to the Eastern Division. The Clerk shall record the defendants as the State of Tennessee;[1] Correctional Medical Services, Inc.

---

[1] The Court construes the plaintiff's allegations against the TDOC and the NWCX as an attempt to state a claim against the State of Tennessee.

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on ___7/29/05___

10

("CMS");[2] Bettye Smith, a nurse at the NWCX; NWCX Corrections Officer King; Alex Weaks, a maintenance worker employed at the NWCX; Dr. Smith, who is employed at the NWCX; Nickey Sadler, who is employed in the NWCX maintenance department; NWCX Warden Tony Parker; and NWCX Health Administrator Samantha Phillips.

1.    Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)-(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[3]   The statute merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, the plaintiff has properly completed and submitted an *in forma pauperis* affidavit containing a certification by the trust fund officer.  Although the plaintiff has not submitted a trust fund account statement, the information supplied by the plaintiff is sufficient to permit assessment of the filing fee.  Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is ORDERED that, within thirty (30) days of the entry of this order, plaintiff file a trust fund account statement for the six months prior to the commencement of this action.  It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or

---

[2]  The Court construes the plaintiff's allegations against the NWCX Medical Department as an attempt to state a claim against CMS, which operates that department.

[3]  Because this case was filed prior to March 7, 2005, the new $250 civil filing fee is inapplicable.

deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit.  When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court.  If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account, and forward them to the Clerk of Court.  On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.  All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 262 U.S. Courthouse, 111 S. Highland Ave., Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

The obligation to pay this filing fee shall continue despite the immediate dismissal

3

of this case. 28 U.S.C. § 1915(e)(2). If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order. If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the NWCX to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees. However, the Clerk shall not issue process or serve any other papers in this case.

II.    Analysis of Plaintiff's Claims

The allegations of the complaint are difficult to decipher, because the allegations are not presented in chronological order and because the narrative is interspersed with references to grievances that are not attached to the complaint or fully described. Plaintiff alleges that he was physically assaulted by defendant Weaks on June 11, 2003, June 16, 2003, and July 7, 2003. The June 11, 2003 assault consisted of Weaks allegedly hitting the plaintiff in the chest with his fist and bear hugging him. The plaintiff alleges he filed a grievance, and Weaks was given a two-day suspension. Plaintiff alleges that he was promised by unspecified persons that Weaks would be severely punished. On June 16,

2003, Weaks allegedly slapped the plaintiff in the chest when he was frisking him. Plaintiff alleges that he filed a grievance, but the complaint does not set forth the outcome of that grievance. The alleged "assault" that occurred on July 7, 2003 consisted of ordering the plaintiff to ride on a transport cart over very rough terrain. The plaintiff contends that the July 7, 2003 incident exacerbated a pre-existing back injury. Plaintiff allegedly asked for emergency medical treatment but "staff" refused his request. Plaintiff alleges he filed a grievance, but the subject matter and resolution of that grievance are not set forth in the complaint.

On December 26, 2003, plaintiff alleges he signed up for sick call because he was experiencing pain from the assaults by Weaks. After speaking to the plaintiff, defendant Smith, the nurse on duty, put the plaintiff's name on the list to see the doctor. However, as of March 9, 2004, the plaintiff had not seen the doctor. He was still charged $3.00 for the sick call visit. Plaintiff allegedly filed information requests on March 9, 2004 and on March 17, 2004, but received no response. Plaintiff alleges he filed a grievance on March 22, 2004 alleging that he has received inadequate medical care. The complaint does not state the defendants named in the grievance nor does it disclose the result of the grievance.[4]

On April 27, 2004, plaintiff was allegedly called to the clinic for a follow-up to a tuberculosis test that had been administered several days earlier. At that time, plaintiff

---

[4] Plaintiff further alleges that he has been denied adequate medical care for his back and neck injuries and dizzy spells. He asserts the previous medication did not work, but the doctor continued to prescribe it. It is not clear when this allegedly occurred, and it is not clear whether the plaintiff filed a grievance.

alleges he was in severe pain due to his back problem. After sitting in a hard chair while waiting for his name to be called, he tried to get up, collapsed on the floor, and could not get up. Defendant King allegedly asked plaintiff if he was all right, and the plaintiff stated that he could not feel or move his legs. Defendant Smith was allegedly on duty at the time, but she did not perform any examination with respect to the plaintiff's collapse but, instead, only checked the results of his tuberculosis test. Smith allegedly told plaintiff the only way he could receive medical attention for the collapse was to sign up for sick call. Plaintiff stated that he could not walk and therefore could not sign up, and defendant King suggested that plaintiff be provided a wheelchair so he could be transported to the area where the sick call sheet is maintained.[5]  Smith eventually agreed to let plaintiff use a wheelchair, but she refused to investigate the cause of his pain unless he first signed up for sick call. Plaintiff alleges that, as of May 1, 2004, he had not received medical treatment or pain medication, and he no longer had a wheelchair.

Dr. Smith is named as a defendant because he allegedly failed to adequately treat the plaintiff's back condition, investigate the cause of the plaintiff's medical problem, and prevent the progression of the plaintiff's injury. The plaintiff apparently is currently confined to a wheelchair. Smith also allegedly mumbled something derogatory under his breath on September 16, 2003. The plaintiff alleges he filed a grievance on September 27, 2003 about the mumbled words and inadequate medical care, but the complaint does not

---

[5] King is named as a defendant because she failed to notify a supervisor of the plaintiff's collapse at the clinic.

state the outcome of that grievance.

Defendant Sadler is named in the complaint as the supervisor of defendant Weaks. Sadler allegedly denied the plaintiff medical care after the July 7, 2003 incident in which the plaintiff was injured while riding in the transport cart, and he also allegedly has knowledge of the grievances the plaintiff filed concerning the incidents on June 11, 2003 and June 16, 2003. It is not clear whether plaintiff named defendant Sadler in any of his grievances.

Defendant Parker is named in the complaint because he allegedly has knowledge of the subject-matter of the plaintiff's grievances and failed to intervene on his behalf. It is not clear whether plaintiff named defendant Parker in any of his grievances.

Defendant Phillips is named in the complaint because she allegedly has knowledge of grievances the plaintiff filed on September 27, 2003, March 22, 2004, and May 1, 2004 and failed to intervene on his behalf. In addition, Phillips failed to investigate the plaintiff's injury and to ensure that he was receiving adequate medical care. It is not clear whether the plaintiff named defendant Phillips in any of his grievances. The plaintiff seeks compensatory and punitive damages and payment of his future medical expenses.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

7

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system).  This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims.  Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000).  To comply with the mandates of 42 U.S.C. § 1997e(a):

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Knuckles El, 215 F.3d at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), cert. denied, 125 S. Ct. 1639 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion).  Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action.  Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).  Finally, the Sixth Circuit recently held that district courts

are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims. <u>Jones Bey v. Johnson</u>, 407 F.3d 801, 805-09 (6th Cir. 2005).

In light of the large number of claims, the plaintiff has not satisfied his burden of demonstrating that he exhausted his administrative remedies with respect to each and every one of his claims. Moreover, as previously explained, the plaintiff has not satisfied his burden of demonstrating that he filed grievances with respect to each of the defendants, as required by <u>Moorer v. Price</u>, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her), <u>Thomas v. Woolum</u>, 337 F.3d 720, 733-34 (6th Cir. 2003), and <u>Curry</u>, 249 F.3d at 504.

The Sixth Circuit has stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*." <u>Baxter</u>, 305 F.3d at 489.[6] Moreover, pursuant to the recent decision in <u>Jones Bey</u>, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. As a result, a case must be dismissed unless a prisoner has exhausted each of his claims with respect to every defendant named in each claim. <u>Foushee v. Wiggins</u>, No.

---

[6] As the Sixth Circuit explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." <u>Baxter</u>, 305 F.3d at 489.

3:05CV7108, 2005 WL 1364613, at *3 (N.D. Ohio June 8, 2005). Accordingly, the Court DISMISSES the complaint in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).

III.   Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[7] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore,

---

[7] Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee.

the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)-(b).

        IT IS SO ORDERED this _28th_ day of July, 2005.


                                                            James D. Todd
                                        JAMES D. TODD
                                        UNITED STATES DISTRICT JUDGE

11

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 10 in
 case 2:05-CV-02028 was distributed by fax, mail, or direct printing on
July 29, 2005 to the parties listed.

Jerry T. Burke
NWCX
142942
960 State Route 212
Tiptonville, TN 38079

Honorable James Todd
US DISTRICT COURT